IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2011-NMSC-014

Filing Date: April 1, 2011

Docket No. 31,567

STATE OF NEW MEXICO,

       Plaintiff-Petitioner,

v.

JAIME GUTHRIE,

       Defendant-Respondent.

ORIGINAL PROCEEDING ON CERTIORARI
Ricky D. Purcell, District  Judge

Gary K. King, Attorney General
Anita Carlson, Assistant Attorney General
Santa Fe, NM

for Petitioner

Robert E. Tangora, L.L.C.
Robert E. Tangora
Santa Fe, NM

for Respondent

OPINION

BOSSON, Justice.

{1}     Citing its recent opinion, *State v. Phillips,* 2006-NMCA-001, 138 N.M. 730, 126 P.3d 546, the Court of Appeals reversed Defendant's probation revocation on due process grounds. *See State v. Guthrie*, 2009-NMCA-036, 145 N.M. 761, 204 P.3d 1271, *cert. granted*, 2009-NMCERT-003, 146 N.M. 604, 213 P.3d 508.  Defendant did not have an opportunity to cross examine his probation officer, who did not testify, and the probation officer's former supervisor, who did testify, had no personal knowledge of the circumstances surrounding the alleged violations. *Id.* ¶¶ 3-4.  The Court concluded that Defendant's due process right to confrontation demanded that the district judge specifically "address" the

1

reasons for the absence of Defendant's probation officer or "specifically state the reasons that the evidence was sufficiently accurate or reliable so as to excuse [her] presence." *Id.* ¶¶ 14-15.

**{2}** Because we conclude that *Phillips* established a standard that is unnecessarily preoccupied with the reason a witness is absent, instead of considering whether confrontation of the witness is essential to the truth-finding process in the context of probation revocation, we overrule *Phillips*, 2006-NMCA-001. In so doing, we attempt to guide the due process inquiry of our courts to focus more on the need for, and the utility of, confrontation of a live witness in the context of a particular case. Although the district court in the present case should have been more explicit in its reasons for relying on hearsay evidence without confrontation, our review of the record supports the court's decision to revoke. Accordingly, we reverse the Court of Appeals and remand to the district court for any remaining proceedings in furtherance of its decision to revoke Defendant's probation.

**BACKGROUND**

**{3}** In 2005, Defendant pled guilty to three offenses and was placed on supervised probation. Following a motion to revoke probation, Defendant agreed to attend a ninety-day residential treatment program. Defendant's probation officer, Cindy Chavez, signed his order of probation.

**{4}** In 2006, the State filed a motion to revoke probation alleging several probation violations, the most significant, for our purposes, being Defendant's failure to complete the ninety-day treatment program. The State initially subpoenaed Chavez as its only witness to testify at the probation revocation hearing. When the hearing was rescheduled, however, the State called Jaime Olivas, Chavez's supervisor, to testify, instead of Chavez, who apparently had transferred to another part of the state.

**{5}** During the revocation hearing, Defendant moved to dismiss because Chavez was not available for cross examination, although she had filed the probation violation report upon which the motion was based. Olivas apparently had little or no personal knowledge about the case. After a brief discussion of the merits of Defendant's hearsay and confrontation objections, the judge reserved ruling.

**{6}** Olivas testified that he was a probation supervisor but that he had not directly supervised Defendant. Olivas identified a document presented to him as a "report of probation." Olivas referred to documents from Defendant's probation file, including a probation report and a fax from Defendant's residential treatment center, to testify that Defendant had been discharged from the court-ordered treatment program without completing it, had not attended other required appointments, and had not paid probation costs.

**{7}** In the course of cross examining Olivas, Defendant challenged Olivas's lack of

personal knowledge of the alleged probation violations and the lack of explanation why Chavez was not present at the hearing. Olivas conceded that he had not signed Defendant's probation report, had never met Defendant, and had no personal knowledge about Defendant. In addition, Olivas had never spoken with anyone from the residential treatment center, nor had he independently investigated any of the allegations against Defendant. Olivas's knowledge was based solely on the information he had reviewed in the probation file and the report, including a fax from the treatment program and documents prepared by Chavez.

**{8}**     At the conclusion of the hearing, the district court found that Defendant had violated his probation. Importantly, the judge observed that Defendant had been arrested in Quay County and that "we have no residential treatment center in Quay County," the obvious inference being that Defendant could not have successfully completed his assigned program. The judge did not evaluate the reasons for Chavez's absence or elaborate on his reasons for relying on the hearsay evidence from Olivas.

**{9}**     When Defendant appealed his probation revocation, our Court of Appeals reversed, stating that the district court had failed to address the reasons for Chavez's absence or "the reasons that the evidence was sufficiently accurate or reliable so as to excuse the presence of Ms. Chavez." *Guthrie*, 2009-NMCA-036, ¶ 15. According to the Court of Appeals, the district court's failure to justify Chavez's absence or make an explicit finding of reliability deprived Defendant of his constitutionally protected opportunity to confront the principal witness against him. *Id.* In so doing, the Court of Appeals relied on *Phillips*, 2006-NMCA-001. *See Guthrie*, 2009-NMCA-036, ¶ 15. We granted certiorari to consider both this case and the continued viability of *Phillips*.

## DUE PROCESS RIGHT TO CONFRONTATION IN PROBATION PROCEEDINGS

**{10}**     The U.S. Supreme Court has held that, under the conditions specified in *Morrissey v. Brewer*, 408 U.S. 471, 487 (1972), "a probationer, like a parolee, is entitled to a preliminary and a final revocation hearing." *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973). *Morrissey* emphasized that revocation hearings are informal. 408 U.S. at 487. Revocation of probation "'deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special [probation] restrictions.'" *Gagnon*, 411 U.S. at 781 (quoting *Morrissey*, 408 U.S. at 480). Because loss of probation is loss of only conditional liberty, "the full panoply of rights due a defendant in a [criminal trial] do[] not apply." *Morrissey*, 408 U.S. at 480; *accord State v. Mendoza*, 91 N.M. 688, 690, 579 P.2d 1255, 1257 (1978).

**{11}**     *Morrissey* instructs that due process "is flexible and calls for such procedural protections as the particular situation demands" and "*not all situations calling for procedural safeguards call for the same kind of procedure.*" 408 U.S. at 481 (emphasis added). Given that inherent flexibility, *Morrissey* established minimum due process requirements for probation revocation proceedings, including "an informal hearing structured to assure that the finding of a [probation] violation will be based on verified facts and that the exercise of

discretion will be informed by an accurate knowledge of the parolee's behavior." *Id.* at 484. The hearing

> must lead to a final evaluation of *any contested relevant facts* and consideration of whether the facts as determined warrant revocation. The parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation.

*Id.* at 488 (emphasis added).

**{12}** Within that basic framework, the U.S. Supreme Court detailed six components of due process in *Gagnon*:

> '(a) written notice of the claimed violations of (probation or) parole; (b) disclosure to the (probationer or) parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; *(d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)*; (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking (probation or) parole.'

411 U.S. at 786 (emphasis added) (quoting *Morrissey*, 408 U.S. at 489). Significantly, live testimony of adverse witnesses, such as a probation officer, is *not* always required during probation revocation hearings. We also observe that the purpose of the hearing is to evaluate "*contested* relevant facts," *Morrissey*, 408 U.S. at 488 (emphasis added), not every assertion the state may put forward as part of its case for revocation. The right protected in probation revocations is not the sixth amendment right to confrontation, guaranteed every accused in a criminal trial, but rather the more generally worded right to due process of law secured by the fourteenth amendment. *Id.* at 472, 497.

**{13}** In *Gagnon*, the Supreme Court subsequently addressed "the difficulty and expense of procuring witnesses from perhaps thousands of miles away," and emphasized that alternatives to live testimony are available during probation revocation hearings. 411 U.S. at 782 n.5.

> While in some cases there is simply no adequate alternative to live testimony, we emphasize that we did not in *Morrissey* intend to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and *documentary evidence*. Nor did we intend to foreclose the States . . . from developing other creative solutions to the practical difficulties of the *Morrissey* requirements.

*Id.* (emphasis added). The requirements were not meant to "impose a great burden on any State's [probation or] parole system." *Morrissey*, 408 U.S. at 490. Today we focus on what *Morrissey* means when it entitles a probationer to confront adverse witnesses, "unless the hearing officer specifically finds good cause for not allowing confrontation." 408 U.S. at 489.

**{14}** Until now, this Court has not had occasion to apply the *Morrissey* requirements to probation. Even before *Morrissey*, however, we recognized that the right to due process in a probation revocation hearing means, at a minimum, notice and an opportunity to be heard. *See Ex parte Lucero*, 23 N.M. 433, 438-39, 168 P. 713, 715 (1917), *superseded by statute as stated in State v. Holland*, 78 N.M. 324, 431 P.2d 57 (1967). Our Court of Appeals later adopted "reasonable certainty" as the proper standard of proof in a probation revocation hearing. *State v. Brusenhan*, 78 N.M. 764, 766, 438 P.2d 174, 176 (Ct. App. 1968) ("'[A] violation of the conditions of probation must be established with such reasonable certainty as to satisfy the conscience of the court of the truth of the violation. It does not have to be established beyond a reasonable doubt.'" (quoting and adopting language from *Sparks v. State*, 47 S.E.2d 678, 680 (Ga. Ct. App. 1948))).

**{15}** Our Court of Appeals has previously applied several of the *Morrissey* due process factors. *See, e.g.*, *State v. Orquiz*, 2003-NMCA-089, ¶ 15, 134 N.M. 157, 74 P.3d 91 (written notice); *State v. Sanchez*, 94 N.M. 521, 523, 612 P.2d 1332, 1334 (Ct. App. 1980) (due process in light of revocation hearing delay); *State v. Montoya*, 93 N.M. 84, 85-86, 596 P.2d 527, 528-29 (Ct. App. 1979) (right to be heard). In addition, the Court of Appeals has outlined certain limitations on those rights and related rights. *See, e.g.*, *State v. Sanchez*, 2001-NMCA-060, ¶¶ 11-18, 130 N.M. 602, 28 P.3d 1143 (establishing due process standards for admitting lab test results in probation revocation hearing and not requiring live testimony); *State v. DeBorde*, 1996-NMCA-042, ¶ 13, 121 N.M. 601, 915 P.2d 906 ("To require full discovery . . . would interfere with the State's strong 'interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial.'" (quoting *Morrissey*, 408 U.S. at 483)). In *State v. Vigil*, 97 N.M. 749, 751, 643 P.2d 618, 620 (Ct. App. 1982), our Court of Appeals first applied the *Morrissey* "right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." (Internal quotation marks omitted.)

**{16}** In *Vigil*, a confidential informant gave sworn, out-of-court statements accusing probationer Vigil of having committed a new crime—possessing stolen property—while on probation. 97 N.M. at 750, 643 P.2d at 619. The informant, however, refused to testify against Vigil, leaving Vigil unable to cross-examine his accuser. *Id.* at 750-51, 643 P.2d at 619-20. On appeal from a revocation order, our Court of Appeals correctly held that the right to confrontation was "violated to the extent the trial court relied on the informant's

5

sealed answers in revoking probation."[1]  *Id.* at 751, 643 P.2d at 620.  We agree with the result in *Vigil*.

**{17}**   After *Vigil*, our Court of Appeals next applied *Morrissey*'s good-cause exception in *Phillips,* 2006-NMCA-001, ¶¶ 11-16 and, most recently, in the present case *Guthrie,* 2009-NMCA-036, ¶¶ 14-21.  The *Guthrie* and *Phillips* proceedings share similar facts.  First, probation officers who had not personally supervised the probationers presented the only live testimony in support of revocation.  *Compare Phillips*, 2006-NMCA-001, ¶¶ 4-7, *with Guthrie,* 2009-NMCA-036, ¶¶ 3-4.  In both cases, the probation officer relied exclusively on documents in the probation file, about which he had no personal knowledge, to testify about a probationer's failure to complete a required treatment program.  *Guthrie,* 2009-NMCA-036, ¶¶ 3-4; *Phillips,* 2006-NMCA-001, ¶¶ 4-7.  *Phillips* was further complicated in that the probation had been transferred to Arizona and some documents to which the officer made reference in his testimony were from that state.  2006-NMCA-001, ¶¶ 1, 6-7.  In both cases, the state failed to enter the contents of the probation files into evidence or submit sworn affidavits.  Important to this Opinion, however, the accused probationers in both *Guthrie* and *Phillips* never disputed the substance of the state's evidence; namely, a failure to complete a mandatory treatment program.  In addition, neither probationer attempted to show how he could have contested the charge of failure to complete treatment, if only he had been offered an opportunity to cross examine the absent witness.  *See generally Guthrie*, 2009-NMCA-036; *Phillips,* 2006-NMCA-001.

**{18}**   In each proceeding, the district court revoked probation without requiring testimony from the probation officer having personal knowledge of the contents of the file.  In *Phillips*, the judge appropriately emphasized that the state's evidence about failure to complete the treatment program had not been rebutted and was essentially uncontested:  "it was a verified fact that [the d]efendant . . . had been in his program for less than the requisite six months."  2006-NMCA-001, ¶ 8.  As the district judge observed, Phillips was returned to custody during the time he was supposed to be in treatment.  *Id.*; *but see id.* ¶ 18 (criticizing the district judge's knowledge of the actual time line).

**{19}**   Similarly in *Guthrie*, the district court noted that the probationer (Defendant in this case) was arrested in Quay County at the very time he was supposed to be in treatment in another locale.  In addition to that verifiable fact, the State's in-court testimony concerning the fax from the treatment center was "'probative of the fact' that Defendant had violated the terms of his probation by not successfully completing the residential treatment program."  *Guthrie*, 2009-NMCA-036, ¶ 6. Since Defendant had not challenged the substance of the

---

[1]*Vigil* cited two out-of-state cases for guidance in future probation revocation cases where "nonconfronted information might properly be used."  97 N.M. at 751, 643 P.2d at 620 (citing *Mason v. State*, 631 P.2d 1051, 1056 (Wyo. 1981) and *Anaya v. State*, 606 P.2d 156, 158 (Nev. 1980)).  While we agree with the outcome in *Vigil*, we do not necessarily follow the reasoning of the cases upon which it relied.

State's evidence or provided any contrary evidence or an explanation for his absence from the program, the court concluded that Defendant had failed to complete the program and had violated his probation. *Id.* A revocation order followed.

**{20}** Notwithstanding the explanations by the trial judges for their findings of probation violation, in each case the Court of Appeals reversed, holding that the probationers were denied due process. According to *Phillips*, if the state had attempted to obtain the testimony of the out-of-state witnesses but could not, or if there were another "reason on the record for the district court to accept the documents . . . as true," then that might have constituted good cause. 2006-NMCA-001, ¶ 13. In the present case, the Court of Appeals looked to *Phillips* to conclude that Defendant was not afforded due process, explaining that a district court can make the necessary finding of good cause for not requiring live testimony by either "(1) specifically addressing the State's problems in securing the presence of the absent witness, or (2) specifically stating the reasons that the hearsay evidence offered has particular indicia of accuracy and reliability such that it has probative value." *Guthrie,* 2009-NMCA-036, ¶ 14 (citing *Phillips*, 2006-NMCA-001, ¶¶ 16-17).

**{21}** In both cases, our Court of Appeals interpreted "good cause" to mean, in large part, a sufficient explanation for the absence of live testimony. In neither case did the Court of Appeals consider the necessity for, and utility of, confrontation with respect to the truth-finding process in the specific case before it. And in neither case did the Court of Appeals attempt to assess the utility of confrontation in light of these straightforward and routine charges—the "simple, objective, and uncontroverted fact" that probationer "either did or did not successfully complete the program," *Bailey v. State*, 612 A.2d 288, 295 (Md. 1992).

**DISCUSSION**

**{22}** Because we review a question purely of law, we review the Court of Appeals' decision de novo while deferring to the trial court's factual findings. *See State v. Brown*, 2006-NMSC-023, ¶ 8, 139 N.M. 466, 134 P.3d 753; *In re Estate of Armijo*, 2001-NMSC-027, ¶ 7, 130 N.M. 714, 31 P.3d 372.

**{23}** Other state courts have embraced the U.S. Supreme Court directive to develop "creative" solutions to the practical difficulties presented under the *Morrissey* requirements to probation revocation. *See Gagnon*, 411 U.S. at 782 n.5. In the context of confrontation, courts have adopted multi-factor tests, *see, e.g.*, *Bailey*, 612 A.2d at 293-95; two-factor tests, *see, e.g.*, *State v. Craig*, 720 N.E.2d 966, 969-70 (Ohio Ct. App. 1998); "totality of the circumstances" tests, *see, e.g.*, *Commonwealth v. Durling*, 551 N.E.2d 1193, 1199-1200 (Mass. 1990); and a conditional balancing test, *see, e.g.*, *People v. Stanphill*, 87 Cal. Rptr. 3d 643, 657 (Ct. App. 2009) (applying a balancing test, but if a hearsay exception such as the spontaneous statement exception applies, then good cause exists without a balancing test).

**{24}** Some courts *only* consider the reasons for a witness's absence, while other courts

*only* consider the "substantial trustworthiness" of the evidence presented without concerning themselves with the absence. *Compare State v. Brown*, 600 S.E.2d 561, 565 (W. Va. 2004) (finding no "good cause" when the lower court did not consider whether a lab technician was unavailable as a witness), *with Reyes v. State*, 868 N.E.2d 438, 441-42 (Ind. 2007) (finding no "good cause" for determining hearsay evidence that should be admitted at a probation revocation hearing, despite witness availability). Several courts have adopted a balancing test similar to the federal Ninth Circuit that weighs multiple factors. *See, e.g.*, *United States v. Kelley*, 446 F.3d 688, 692 n.2 (7th Cir. 2006); *United States v. Walker*, 117 F.3d 417, 420 (9th Cir. 1997); *State v. Wibbens*, 243 P.3d 790, 791-92 (Or. Ct. App. 2010). "The relevant factors . . . include '(1) the importance of the evidence to the court's finding; (2) the probationer's opportunity to refute the evidence; (3) the difficulty and expense of obtaining witnesses; and (4) traditional indicia of reliability borne by the evidence.'" *Wibbens*, 243 P.3d at 792 (quoting *State v. Johnson*, 190 P.3d 455, 459 (Or. Ct. App. 2008)).

{25} Regardless of the test applied, the focus of the good-cause inquiry is "fundamental fairness," the "touchstone of due process." *Gagnon*, 411 U.S. at 790. We find four state court opinions particularly helpful in understanding the core policy considerations that animate the good-cause analysis. Accordingly, we will discuss these specific opinions in more detail.

{26} The first case, *Bailey,* is one of the strongest opinions to rely primarily on the *reliability* of the evidence presented to determine the necessity for confrontation without inquiring too much into the reasons for the witness's absence. 612 A.2d at 293. Like the case before us, the state sought to revoke probation for failure to complete a mandatory treatment program. *See id.* at 290. The state placed in evidence a letter from the treatment center, introduced through the probation officer, to prove noncompliance. *Id.* at 293.

{27} The Maryland Court of Appeals found certain factors helpful in determining sufficient reliability. *Id.* The court's non-exhaustive list of factors included:

> the presence of any additional evidence which corroborates the proffered hearsay; the type of and centrality of the issue that the hearsay is being offered to prove; and the source of the hearsay, including the possibility of bias or motive to fabricate [and] the facts and circumstances of a particular case . . . .

*Id.* Applying these factors, the court found the letter was reasonably reliable. Its contents were corroborated by tacit admissions from the probationer to his probation officer and were uncontested at the revocation hearing. *Id.* at 295. The relevant portions of the letter asserted the "simple, objective, and uncontroverted fact" that the probationer had left the treatment program. *Id.* Moreover, the source of the information (the treatment center) was reliable because it was "duty-bound to report to the Division of Parole and Probation or the court any failure of the probationer to comply with its conditions for the completion of its program." *Id.* Thus, the Maryland trial court properly admitted and relied upon the letter to revoke

8

probation, without requiring any additional testimony or providing for additional opportunities to confront witnesses. *Id.* at 296.

**{28}** In the second case, *Reyes*, the Supreme Court of Indiana upheld a probation revocation based on an affidavit from the scientific director of a toxicology laboratory, stating his professional opinion that the probationer had used cocaine within seventy-two hours of a urine sample collected during the probation period. 868 N.E.2d at 442-43. Attached to the affidavit were the urinalysis test results and "related documents," which were all admitted without requiring live testimony from anyone with personal knowledge about the documents or the test results. *Id.* at 439-40. Adopting a "substantial trustworthiness" test, the Indiana court observed that affidavits and related documents were the kinds of "letters, affidavits, and other material" that the U.S. Supreme Court had found reliable in *Morrissey*. *Reyes*, 868 N.E. at 440-42.

**{29}** The Indiana court found that the scientific director's education in related science, experience with various labs and their procedures, and his personal review of probationer's urinalysis, rendered the affidavits substantially trustworthy. *Id.* at 442. The court saw

> no reason to require that the State expend its resources to demonstrate that its interest in not producing the declarant outweighs the probationer's interest in confronting the same every time it seeks to admit reliable hearsay evidence in a routine probation revocation hearing or, if the State fails the balancing test, expend its resources to produce a witness (or indeed to require that witness to expend his or her time) to give routine testimony in that routine probation revocation hearing, when a reliable piece of hearsay evidence is available as a substitute.

*Id.* at 441-42

**{30}** In our third case, *People v. Gomez*, the California Court of Appeal upheld the admission of a hearsay probation report on electronic probation records during a revocation hearing to prove that the probationer did not report as directed, make restitution payments, or submit verification of his employment and attendance at counseling sessions. 104 Cal. Rptr. 3d 683, 690-91 (2010). The California court reasoned that the presence of the probationer's probation officer at the hearing "likely would not have added anything to the truth-furthering process, because he would be testifying to a negative"—i.e., that the required events had not occurred. *Id.* at 690.

**{31}** Continuing, the *Gomez* court observed that "the demeanor of the [probation] officers would not have been a significant factor in evaluating the credibility of their foundational testimony pertaining to the contents of the probation department's records regarding defendant's failure to report, provide verification of his employment, attend counseling, and pay restitution." *Id.* In other words, live testimony is not required when the evidence concerns "routine matters," such as keeping appointments, making restitution, and "similar

records of events of which the probation officer is not likely to have personal recollection and as to which the officer would rely instead upon the record of his or her own action." *Id.* at 691 (internal quotation marks and citation omitted). The court did not discuss the reasons why certain witnesses were not present to testify, but instead analyzed good cause in terms of the reliability of the hearsay evidence to determine that the probationer's confrontation rights were not compromised.

**{32}**    A final case, *Wibbens*, thoughtfully illustrates when confrontation is essential to due process, depending, again, on the reliability of the hearsay evidence. 243 P.3d at 793. In Oregon, a previous appellate opinion upheld a probation revocation based primarily on documentary evidence (an affidavit and the contents of the defendant's probation file) that the probationer failed to report to his probation officer and to disclose his present address. *Johnson*, 190 P.3d at 457-58. By contrast, the case against Wibbens was based upon testimony from a probation officer who had been verbally informed by a sheriff's deputy that the probationer "smelled of alcohol [and] appeared to be intoxicated." *Wibbens*, 243 P.3d at 791. Because the deputy was unavailable, and the evidence unreliable, the court reversed the revocation. *Id.* at 793. The court noted, in part, that unlike the earlier case, in which the facts proved by hearsay (failure to report) were "few and straightforward," not involving "matters of opinion or interpretation," the allegation of Wibbens' intoxication was based on the deputy's "sensory perception" and, as such, was "subject to errors of judgment or interpretation." *Id.* (internal quotation marks and citation omitted). Accordingly, the state had to produce and make the deputy available for cross examination to ensure the reliability of the accusation. *Id.*

### General Principles

**{33}**    From our review of the case law, and these four opinions in particular, we glean certain principles that guide us as we try to determine what it means to establish "good cause for not allowing confrontation." *Gagnon*, 411 U.S. at 786. Initially, we reiterate the cautionary words from *Morrissey* that due process "is flexible and calls for such procedural protections as the particular situation demands." 408 U.S. at 481. Determining good cause, therefore, is based on a case-by-case analysis. *See, e.g.*, *People v. Arreola*, 875 P.2d 736, 746 (Cal. 1994). At its heart are considerations of pragmatism and fairness and the utility of confrontation in a particular factual context. The Court also keeps a careful eye on the admonition in *Morrissey*—that "the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Id.* at 489.

**{34}**    In evaluating the utility of confrontation, courts look to the kind of evidence offered to prove a particular kind of assertion. Is the assertion central to the reasons for revocation, or is it collateral? *See Bailey*, 612 A.2d at 293 (listing "type of and centrality of the issue" as factors determining reliability, and thus utility). Is the assertion contested by the probationer, or is the state merely being asked to produce a witness to establish something that is essentially uncontroverted? For example, in the case at bar, Defendant never

10

indicated that he *did* complete the residential treatment program, central as it was to the reasons for revocation. Defendant never created any doubt in the truth of the evidence offered by the State. In addition, he never offered any reasons to suspect the validity of the charge, nor any factors in mitigation, such as his reasons for leaving the treatment facility, or that perhaps it was all just a misunderstanding. In evaluating the utility of confrontation, therefore, many courts would question the purpose of, and the need for, a live witness to establish an evidentiary fact (failure to complete) that is never challenged for its accuracy or its reliability, but only on procedural or evidentiary grounds.

**{35}** We reiterate that under *Morrissey* only *contested* relevant facts must be evaluated during a hearing to guarantee due process. *See* 408 U.S. at 488 ("[The] hearing . . . must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation."). Evidence is contested if contrary evidence has been introduced or the probationer persuades the court that a particular assertion may not be reliable, accurate, or true. *See, e.g., State v. Ellis*, 2008-NMSC-032, ¶ 2, 144 N.M. 253, 186 P.3d 245 (characterizing "contested facts as alleged by [the d]efendant," as "contradictory testimony"); *Ruhe v. Abren*, 1 N.M. 247, 253 (Terr. 1857) (characterizing a "conflict of evidence" as a "contested fact"). *See generally Black's Law Dictionary* 361 (9th ed. 2009) (defining "contest" as "**1.** To strive to win or hold; contend <he chose to contest for the prize>. **2.** *To litigate or call into question; challenge* <they want to contest the will>. **3.** *To deny an adverse claim or assert a defense to it in a court proceeding* <she contests that charge>." (Emphasis added.)). By reserving a hearing for contested facts only, *Morrissey* recognized that the procedural protections inherent in the truth-finding process, such as a hearing or confrontation, are only necessary when the truth of the state's allegations is challenged.

**{36}** Examining utility through another lens, many courts look either exclusively or primarily to the inherent reliability of the evidence offered. As discussed in *Bailey*, certain hearsay evidence is inherently *reliable* due to its source and the circumstances surrounding its introduction. 612 A.2d at 294. The more reliable the source and contents of hearsay evidence, the less the need for live testimony. As just one of many possible examples, hearsay evidence may be inherently reliable if it conforms to proven exceptions to the hearsay rule. *See Chavez v. City of Albuquerque*, 1997-NMCA-111, ¶ 8, 124 N.M. 239, 947 P.2d 1059 ("Exceptions to the hearsay rule are based on guarantees of reliability and trustworthiness of particular circumstances which the rules of evidence accept as substitutes for the declarant's testimony at trial."). Evidence may be inherently *unreliable*, however, when given by an unidentified, confidential source to prove certain kinds of accusations; for example, an allegation that the probationer has committed another crime must be tested in the crucible of cross examination. *See Vigil*, 97 N.M. at 753, 643 P.2d at 622.

**{37}** By way of another example of the utility analysis, live testimony and confrontation are not equally useful in all situations to test the truthfulness and credibility of hearsay evidence. As recognized in *Gomez*, certain in-court testimony would rely upon records, even if given by the witness who originally made the records, while the source of other hearsay

11

is essentially live testimony given elsewhere. 104 Cal. Rptr. 3d at 687-88; *see also Bailey*, 612 A.2d at 294 ("A second consideration may be whether the proffered hearsay is an objective fact reported by the declarant or instead contains conclusions which ought to be tested by cross-examination."). Hearsay may relate to objective or subjective observations, assert that a probationer acted or failed to act as required, or support facts that are central or ancillary to the ultimate probation violation inquiry. The utility inquiry should consider all of these factors and more.

{38} Evidence supporting subjective conclusions, which may require confrontation, includes sensory-based or judgment-based determinations or interpretations, such as testimony evaluating a probationer's progress during a treatment program. This evidence stands in contrast with evidence supporting the straightforward fact of treatment completion: the probationer "either did or did not successfully complete the program." *Bailey*, 612 A.2d at 295. Another example of a subjective conclusion might be an accusation of another crime committed by a probationer during probation. If probation violation occurs upon indictment or conviction, introducing documents alone should be sufficiently reliable in the absence of some unusual variable. If, on the other hand, the violation is that the probationer is alleged to have *committed* a crime, but has not been convicted, then we would be hard pressed to envision a situation in which personal testimony and confrontation would not be required.

{39} Live testimony is often more useful and important in ascertaining the truth of subjective conclusions which involve judgment, perception, credibility, inferences, and interpretation. *See Wibbens*, 243 P.3d at 793 (reasoning that whether a probationer smelled of alcohol and appeared intoxicated were "precisely the kind of unverified facts that the right to confrontation is designed to test" during a probation violation hearing). Conversely, if the evidentiary question is merely objective, negative, and routine—that the probationer was not in a particular place when he was supposed to be—then the question frequently may be answered without the need for confrontation.

### The Good-Cause Spectrum

{40} For illustrative purposes, we set forth the need-for-confrontation analysis as a kind of spectrum or sliding scale with extremes at either end and much balancing and weighing of competing interests in between. Combinations of the non-exhaustive factors that affect the utility of cross examination create infinite degrees of "cause," a full spectrum. On one end of the spectrum, where good cause for not requiring confrontation is likely, we would include situations in which the state's evidence is uncontested, corroborated by other reliable evidence, and documented by a reliable source without a motive to fabricate, or possibly situations where the evidence is about an objective conclusion, a routine recording, or a negative fact, making the demeanor and credibility of the witness less relevant to the truth-finding process. On this side of the good-cause spectrum, live testimony and cross examination offer almost no utility to the fact-finding process.

{41} On the "no good cause" end of the spectrum, evidence is contested by the defendant,

unsupported or contradicted, and its source has a motive to fabricate; it is about a subjective, judgment-based observation that is subject to inference and interpretation, and makes a conclusion that is central to the necessary proof that the defendant violated probation. In such a case, the state's failure to produce the witness, for almost any reason, deprives a defendant of due process. Between the two extremes there is no bright-line rule for determining good cause—but then, that is the nature of due process; it "is flexible and calls for such procedural protections as the particular situation demands." *Morrissey*, 408 U.S. at 481.

### *Applying the Test for Good Cause to Guthrie*

**{42}** Ironically, the Court of Appeals in *Guthrie* appeared to be headed in the very direction we set forth today, with one exception. The Court stated, "[t]he weaker the probative value, the greater the need for confrontation, and, hence, the greater the need to justify the absence of the witness." *Guthrie*, 2009-NMCA-036, ¶ 20. We would state it differently; the weaker the probative value, the greater the need for live testimony and confrontation. On the other hand, the Court stated, "[t]he stronger the probative value, the lesser the needs of confrontation and justification. Indeed, with a showing of sufficiently probative or reliable hearsay evidence, there is no need to show good cause for the absence of the witness." *Id.*

**{43}** The trial court should focus its analysis on the relative need for confrontation to protect the truth-finding process and the substantial reliability of the evidence, as we have outlined in this Opinion. If that need is significant, and the court specifies the reasons why, then the witness must appear and be subject to confrontation, regardless of the reasons for his or her absence. Conversely, if the need for confrontation is not significant, as discussed earlier, and the court specifies why, then it does not matter whether the witness is available. Simply put, the reasons for the witness's absence are, for the most part, irrelevant to the balancing process we set forth. A court's focus should instead be on the need for, and utility of, confrontation with respect to the truth-finding process and in light of the particular case at hand, including the specific charge pressed against the probationer.

**{44}** Our Court of Appeals may have felt bound by *Phillips* in continuing to focus on the reason for the witness's absence. Therefore, we overrule *Phillips*. With some revisions as indicated, we endorse the Court of Appeals' balancing analysis; namely, the stronger the probative value and reliability of the evidence, the less the need for confrontation.

**{45}** Applying our spectrum or sliding scale analysis, *Guthrie* falls decisively on the "good cause" end and does not require confrontation. Several reasons support our conclusion. First, Defendant did not contest the allegation that he failed to complete his treatment at the rehabilitation center, thus precluding a due process complaint under *Morrissey*'s requirement for a hearing on contested facts. 408 U.S. at 488 ("The parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation.").

Indeed, Defendant never offered any evidence in mitigation to explain his absence.

**{46}** Second, the key evidentiary fact of Defendant's non-compliance with residential treatment—an objective, negative, and rather routine fact—was easily and reliably established to a reasonable degree of certainty by a written statement from the treatment center. Here the testifying probation officer had a fax from the treatment center saying as much. While it would have been preferable to introduce the fax itself into evidence, and better yet with an affidavit, in this case the fax was in the probation file and the probation officer testified to its contents relating to routine matters, like those in *Gomez*, 104 Cal. Rptr. 3d at 691. Olivas also testified that Defendant did not report to his probation officer, did not pay probation costs, and did not complete treatment. As noted in *Gomez*, 104 Cal. Rptr.3d at 690, even a live witness with personal knowledge would likely have referred to the file to make many of these assertions.

**{47}** Third, based on this record, little to nothing could be gained by testimony from a treatment center representative or from Chavez, the absent probation officer. Live testimony would have been of little use to gauge Chavez's demeanor, truthfulness, and credibility. Chavez was known to Defendant, so identity was not at issue. There was no known need to impress upon a probation officer the seriousness of revocation. Neither Chavez nor any representative from the treatment center had any known motive to fabricate or deceive. *See Morrissey*, 408 U.S. at 485-86 (reasoning it would "be unfair to assume that the [probation] officer bears hostility against the [probationer] that destroys his neutrality; realistically the failure of the [probationer] is in a sense a failure for his supervising officer").

**{48}** Finally, in this particular case, the district judge made his own observations—essentially taking judicial notice—that it would have been factually impossible for Defendant to have completed treatment as required, given the time and place of his arrest. In so doing, the judge not only corroborated the State's hearsay evidence, but also provided an independent source supporting the State's hearsay allegation that Defendant had violated his probation. In effect, the judge made the functional equivalent of "specific finding of good cause" for not requiring confrontation. While the content of the State's hearsay evidence was central and important to the State's case against Defendant, when no doubt is cast upon otherwise reliable evidence, the centrality of that evidence does not make confrontation any more essential. Defendant only attacked Olivas's testimony on hearsay grounds; he did not dispute the accuracy of the evidence or bring to light any mitigating circumstances.

**{49}** Although the judge made no explicit findings of good cause, and we do exhort district judges in the future to explain their rulings in more detail, the test for validity of the finding need not be so formulaic. The record supports, and incontrovertibly so, the judge's finding that Defendant violated the terms of his probation. Accordingly, the district court should have been affirmed.

**CONCLUSION**

**{50}** We reverse the Court of Appeals and remand to the district court for remaining proceedings, if any, in furtherance of probation revocation.

**{51}** **IT IS SO ORDERED**.

_____
**RICHARD C. BOSSON, Justice**

**WE CONCUR:**

_____
**CHARLES W. DANIELS, Chief Justice**

_____
**PATRICIO M. SERNA, Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

**Topic Index for _State v. Guthrie_, Docket No. 27,022**

| **CT** | **CONSTITUTIONAL LAW** |
|---|---|
| CT-CT | Confrontation |
| CT-DP | Constitutional Law, Due Process |
| CT-RF | Right to Confrontation |

| **CA** | **CRIMINAL PROCEDURES** |
|---|---|
| CA-CD | Conduct of Defendant |
| CA-CX | Cross-examination |
| CA-DU | Due Process |
| CA-EH | Evidentiary hearing |
| CA-PL | Parole |
| CA-PB | Probation |
| CA-PE | Production of Evidence |
| CA-RV | Probation Revocation |

| **EV** | **EVIDENCE** |
|---|---|
| EV-AE | Admissibility of Evidence |
| EC-CO | Corroborating Evidence |
| EV-CX | Cross Examination |
| EV-CU | Cumulative Evidence |

| | |
|---|---|
| EV-CR | Credibility of Witnesses |
| EV-HR | Hearsay Evidence |
| EV-UE | Uncontradicted Testimony |
| EV-WT | Witnesses |