**Certiorari Denied, October 10, 2012, No. 33,803**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2012-NMCA-116**

**Filing Date: August 14, 2012**

**Docket No. 31,269**

**STATE OF NEW MEXICO,**

        **Plaintiff-Appellee,**

**v.**

**DAVID CASTILLO,**

        **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Robert M. Schwartz, District Judge**

Gary K. King, Attorney General
Olga Serafimova, Assistant Attorney General
Santa Fe, NM

for Appellee

Streubel Kochersberger Mortimer, LLC
Donald F. Kochersberger III
Albuquerque, NM

for Appellant

**OPINION**

**HANISEE, Judge.**

**{1}** Defendant David Castillo was sentenced following an agreement with the State in which he pleaded no contest to criminal sexual penetration in the second degree. Defendant's ensuing nine-year incarcerative sentence was suspended, and he was placed on supervised probation for a total of five years, commencing on December 16, 2005. As a special condition of his probation, Defendant was required to "enter and successfully

1

complete a sex offender specific therapy to include polygraph testing as deemed necessary by the therapist." In April 2010, the State filed a motion to revoke Defendant's probation for failure to successfully complete a sex offender treatment program. A probation revocation hearing was held, and Defendant's probation was revoked on December 14, 2010, a single day prior to its scheduled completion.

{2}     On appeal, Defendant argues that his right to confrontation was violated when the district court allowed the head of Forensic Therapy Service, the sex offender treatment center at which Defendant was a patient, to testify about the results of his polygraph examination—rather than requiring that the State call the individual who actually administered the polygraph test. Based on our New Mexico Supreme Court's opinion in *State v. Guthrie*, 2011-NMSC-014, 150 N.M. 84, 257 P.3d 904, Defendant's claim of error requires this Court to consider "the need for, and utility of, confrontation with respect to the truth-finding process and in light of the particular case at hand, including the specific charge pressed against the probationer." *Id.* ¶ 43. Having taken this standard into consideration, we conclude that Defendant's Fourteenth Amendment right to due process was violated by the district court's allowance of testimony regarding Defendant's polygraph results by someone other than the person who actually administered and interpreted the polygraph test. Accordingly, we reverse.

**BACKGROUND**

{3}     Prior to the probation revocation hearing, Defendant filed a motion in limine or, in the alternative, a motion for continuance. In it, Defendant primarily sought to exclude any testimony regarding the results of his polygraph test from a witness other than Ralph Trotter, who administered Defendant's polygraph test. Defendant argued that he possessed a due process right to confront the witnesses against him even in the context of a probation revocation proceeding, and absent a showing that there was good cause for not producing Mr. Trotter, the State should be barred from proceeding on the petition to revoke if it planned to present evidence regarding the polygraph. Defendant specifically asserted that absent Mr. Trotter's testimony and availability for cross-examination, Defendant would be unable to test Mr. Trotter's credentials and the manner in which the purportedly failed polygraph test was effectuated, and thus the district court lacked a constitutionally adequate basis to conclude that the asserted polygraph results were reliable. Alternatively, Defendant requested an extension of time to permit his chosen expert polygraph examiner the opportunity to review the materials related to the polygraph test and provide testimony regarding his own independent conclusions.

{4}     At the hearing, Defendant maintained that the polygraph results were central to proving the existence of any probation violation. The State countered that the probation violation was not based exclusively on an allegation that Defendant failed his polygraph, but on the broader allegation that Defendant had "failed to fully cooperate and complete the sex offender treatment." The State added that Therese Duran, the supervisor of Forensic Therapy Service, could competently testify regarding "the problems with the polygraphs,

[that] they changed the course of treatment and still failed, because [D]efendant refused to engage." Defendant insisted that the core of Ms. Duran's testimony would be as follows: "If the person is not admitting that they did the offense conduct, and the polygraph tests indicate that they are lying about that, then they consider the person to be noncompliant with the therapy." Thus, while Defendant argued that the polygraph evidence was central to the proof of the probation violation, the State argued that evidence of the polygraph was not actually necessary to prove the violation. The district court took the motion in limine under advisement pending Ms. Duran's testimony.

**{5}** Ms. Duran testified that she supervised Defendant's sex offender treatment and made the ultimate decision to terminate him from the program in late March 2010, roughly six months prior to Defendant's completion of his five-year term of probation. She discussed the two distinct ways polygraphs were used by Forensic Therapy Service as part of the sex offender treatment program. Maintenance polygraphs were used to ensure compliance with the terms of probation—such as the prohibition against being within the specified vicinity of children. Ms. Duran testified that Defendant had passed all of his maintenance polygraph exams. Polygraph exams were additionally conducted regarding the sexual offenses with which the client was charged in order to determine the best course of treatment. According to Ms. Duran's testimony, Forensic Therapy Service sought to address all charges initially brought against the client (not only those to which the client pleaded or was convicted of), and if there were discrepancies between those charges and the client's explanation of events, Forensic Therapy Service relied on polygraphs to resolve the incongruence.

**{6}** According to Ms. Duran, based on Defendant's polygraph results, he was considered to be in "denial" and was placed on a different treatment path aimed at achieving accountability for all conduct with which he was originally charged. Ms. Duran did not provide any testimony as to the manners in which Defendant's polygraph test was conducted or its results were interpreted to reach the conclusion that he was being deceptive. Instead, Ms. Duran summarily stated that Defendant was placed in the "failed polygraph group" due to an indication of deception. She further maintained that he "significantly failed all of the polygraphs related to his sexual offense," but that she did not "recall what the numbers were," only that they were "clearly deceptive."

**{7}** Ms. Duran also discussed how Forensic Therapy Service utilized different therapists and therapies in an effort to progress beyond Defendant's "deception" to achieve a therapeutically "accountable phase." According to Ms. Duran, the difficulty with Defendant's progress was his lack of "[a]ny form of accountability[.]" Once his initial polygraph tests showed deception, Ms. Duran testified that there was no way for Defendant to have graduated from the program without admitting the underlying offense. Ultimately, according to Ms. Duran, Defendant was released from the program for noncompliance "[b]ecause he was not being accountable."

**{8}** Following Ms. Duran's testimony, Defendant reasserted his consistently argued position:

In order for them to admit the testimony regarding the polygraph test results, pass or fail, they need more than Ms. Duran coming up and saying she got a report from someone. I don't think the fact that she got a report is a reliable indication of whether or not the polygraph test was performed by somebody with the ability to perform it, that it was performed with the proper procedures, that the results obtained were reliable, what the level of deception—if that's even an important indication for the polygraph tests—were. What we're talking about is a scientific test. And the only person who testified has just seen the yes-or-no answer. . . .

I think Ms. Duran's pretty clear. The reason [Defendant] was terminated from the program was because he did not admit to the offense conduct. And the reason [why] that is a problem is because they believe he failed polygraph tests, indicating that he was lying about that. If he had passed these polygraph tests, by Ms. Duran's own admission, he would be out of this program. He would be in a different one, maybe. But he would have successfully completed their program.

The State reiterated that it was not the polygraph but Defendant's continued denial that justified revocation. The district court found that the polygraphs were "a component of [Defendant's] failure to finish the program" but that there were also "other behaviors and actions that were interpreted by the staff [as D]efendant . . . not engaging." The district court therefore denied Defendant's motion in limine. Following supplemental testimony by Defendant's probation officer, which did not bear further on the issue of the polygraph, the district court revoked Defendant's probation. The court further elected not to continue the proceeding in order to accommodate the alternative relief requested by Defendant—an opportunity to present his own expert.

**DISCUSSION**

**{9}** "Revocation of probation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special [probation] restrictions." *Guthrie*, 2011-NMSC-014, ¶ 10 (alteration in original) (quoting *Gagnon v. Scarpelli*, 411 U.S. 778, 781 (1973)) (internal quotation marks omitted). "Because loss of probation is loss of only conditional liberty, 'the full panoply of rights due a defendant in a [criminal trial] do [ ] not apply.'" *Id.* (alteration in original) (quoting *Morrisey v. Brewer*, 408 U.S. 471, 480 (1972)). Hence, "[t]he right protected in probation revocation[ cases] is not the [S]ixth [A]mendment right to confrontation, guaranteed every accused in a criminal trial, but rather the more generally worded right to due process of law secured by the [F]ourteenth [A]mendment." *Guthrie*, 2011-NMSC-014, ¶ 12. Due process includes "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." *State v. Vigil*, 97 N.M. 749, 751, 643 P.2d 618, 620 (Ct. App. 1982) (internal quotation marks omitted). Whether Defendant's due process right to confrontation was violated is a question of law. We review

4

questions of law de novo while deferring to the district court's factual findings. *Guthrie*, 2011-NMSC-014, ¶ 22.

**{10}** Our Supreme Court has directed the courts—when discharging their duty to find good cause for lack of confrontation—to consider "whether confrontation of the witness is essential to the truth-finding process in the context of probation revocation." *Id. ¶* 2. This entails considering whether the challenged hearsay evidence "relate[s] to objective or subjective observations, assert[s] that a probationer acted or failed to act as required, or support[s] facts that are central or ancillary to the ultimate probation violation inquiry." *Id.* ¶¶ 34, 37. Stated more specifically, our courts are to consider whether: (1) "the assertion [is] central to the reasons for revocation[] or . . . collateral," (2) "the assertion [is] contested by the probationer, or . . . the state [is] being asked to produce a witness to establish something that is essentially uncontroverted," and (3) the assertion is "inherently reliable." *Id*. ¶¶ 34, 36.

**{11}** Our Supreme Court presented the consideration of these factors as falling on a sliding scale "with extremes at either end and much balancing and weighing of competing interests in between." *Id.* ¶ 40. On one end of the spectrum, *Guthrie* provides that good cause for not requiring confrontation will most likely exist where

> the state's evidence is uncontested, corroborated by other reliable evidence, and documented by a reliable source without a motive to fabricate, or possibly situations where the evidence is about an objective conclusion, a routine recording, or a negative fact, making the demeanor and credibility of the witness less relevant to the truth-finding process.

*Id.* On the other end of the spectrum, *Guthrie* provides that good cause will most likely not exist where

> evidence is contested by the defendant, unsupported or contradicted, and its source has a motive to fabricate; it is about a subjective, judgment-based observation that is subject to inference and interpretation, and makes a conclusion that is central to the necessary proof that the defendant violated probation.

*Id*. ¶ 41.

**{12}** We begin our consideration of the utility of confrontation under the particular facts of this case by looking at the nature of the evidence presented. Defendant argues that in contrast to the evidence challenged in *Guthrie*, the polygraph evidence here was central and contested, as opposed to being merely objective, routine or independently proven. In *Guthrie*, the defendant was placed on supervised probation and agreed to attend a ninety-day residential treatment program as part of a plea agreement. *Id.* ¶ 3. The State filed a motion to revoke probation based on the defendant's failure to complete the program. *Id.* ¶ 4. At

5

the probation revocation hearing, the defendant's probation officer did not testify; rather, the probation officer's supervisor testified and referred to documents contained in the defendant's probation file. *Id.* ¶¶ 4-6. Based on the supervisor's testimony, the district court revoked the defendant's probation. In affirming the revocation, our Supreme Court relied on the fact that the defendant did not contest the allegation that he failed to complete the treatment program and that the defendant's non-compliance was "an objective, negative, and rather routine fact" that "was easily and reliably established to a reasonable degree of certainty by a written statement from the treatment center." *Id.* ¶ 46. In addition, our Supreme Court noted that there was little that could be gained by testimony from a direct employee of the treatment center under the facts of that case, and that the district court had independently corroborated the State's testimony by taking judicial notice that it would have been factually impossible for the defendant to have completed the treatment as required, given the time and place of the defendant's arrest. *Id.* ¶¶ 47-48.

**{13}** "[T]he procedural protections inherent in the truth-finding process, such as a hearing or confrontation, are only necessary when the truth of the state's allegation is challenged." *Id.* ¶ 35. Thus, in *Guthrie*, our Supreme Court considered to be important the fact that the "[d]efendant never created any doubt in the truth of the evidence offered by the State." *Id.* ¶ 34. It further noted that many courts would question the need for "a live witness to establish an evidentiary fact (failure to complete) that is never challenged for its accuracy or its reliability." *Id.* In contrast, Defendant here emphatically challenged the reliability of the polygraph evidence in his motion in limine, his arguments on the issue, and his secondary effort to attain a continuance in order to present expert evidence rebutting the State's polygraph testimony.

**{14}** In addition, Defendant demonstrated through cross-examination of the State's witnesses that the polygraph evidence was central to the State's allegation that Defendant had failed to complete his treatment program. Ms. Duran testified that Defendant's termination from the program was based upon his lack of accountability for the conduct with which he was originally charged. According to Ms. Duran, Defendant was only required to admit to the conduct with which he was first charged because his polygraph indicated that his denial of it was deceptive. If, on the other hand, Defendant's polygraph had not indicated deception, no such admission would have been required. Because the testimony at the probation revocation hearing clearly indicates that Defendant's ultimate failure to admit the offense conduct led to his termination from the program, the polygraph evidence that established the unresolved conflict was "central to the reasons for revocation." *Id.*

**{15}** Furthermore, Defendant accurately points out that polygraph evidence is neither objective nor routine. Instead, polygraph examiners are required to be licensed and adhere to specific procedures in the administration and interpretation of polygraph exams. Ms. Duran's foundation-less testimony that Defendant's polygraph examination indicated deception therefore gives this Court pause. "Evidence supporting subjective conclusions, which may require confrontation, includes sensory-based or judgment-based determinations or interpretations[.]" *Id.* ¶ 38. The conclusion testified to by Ms. Duran in explaining why

Defendant was terminated from the sex offender treatment program was the direct product of Mr. Trotter's interpretation of the polygraph results and his judgment-based determination that the results indicated deception. The State characterizes the evidence at issue as "the straightforward fact of treatment completion." However, the incompletion of treatment in this instance is not premised on an objective fact as was the case in *Guthrie*; rather, the genesis of Defendant's failure to complete treatment was based on the State's evidentiary assertions and argument regarding the results of his polygraph exam. *See id.* ¶¶ 8, 48 (noting that the defendant's failure to complete treatment was based on him not being present at the treatment facility). According to the *Guthrie* analysis, such subjective conclusions weigh compellingly in favor of requiring an opportunity for cross-examination. *Id.* ¶ 37 (citing *Bailey v. State*, 612 A.2d 288, 294 (Md. 1992) ("A second consideration may be whether the proffered hearsay is an objective fact reported by the declarant or instead contains conclusions which ought to be tested by cross-examination.")).

**{16}**     The State does not directly address Defendant's argument that the evidence was central, contested, and not objective or routine. Instead, the State contends that evidence regarding the polygraph was not necessary to proving Defendant's violation of the conditions of his probation and that the burden to subpoena Mr. Trotter was on Defendant because the polygraph results were evidence of mitigation—in other words, a reason Defendant was unable to complete the treatment rather than proof of a violation of his probation. Despite the State's contention that introduction of evidence regarding the polygraph results was unnecessary to prove a violation of Defendant's conditions of probation, that is not the case before us. Rather, the State chose to introduce the polygraph results through Ms. Duran, along with Defendant's refusal to admit all initially charged conduct, as well as the corresponding changes in Defendant's treatment and his ultimate termination from the program. In the context of a probation revocation proceeding, we look to *Guthrie* to see if the evidence the State has elected to present situationally triggers a right of confrontation. Based on the centrality of the polygraph evidence in this circumstance, the subjective and interpretative nature of it, and the fact that Defendant challenged its reliability, we conclude that this case falls on the "no good cause" end of the spectrum established in *Guthrie*. *Id.* ¶ 41. Contrary to the circumstances in *Guthrie*, the utility of confrontation under these facts is evident.

**CONCLUSION**

**{17}**     For the reasons stated above, we hold that Defendant's Fourteenth Amendment right to due process was violated by the district court's decision to allow Ms. Duran to testify exclusively regarding Defendant's polygraph results. Accordingly, we reverse and remand for further proceedings.

**{18}     IT IS SO ORDERED.**

<br>

_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**


_____

**LINDA M. VANZI, Judge**

**Topic Index for _State v. Castillo_, No. 31,269**

**APPEAL AND ERROR**
Remand
Standard of Review

**CONSTITUTIONAL LAW**
Confrontation
Due Process

**CRIMINAL LAW**
Criminal Sexual Penetration

**CRIMINAL PROCEDURE**
Probation
Revocation of Probation

**EVIDENCE**
Polygraph Examination