This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-42625**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**IAN PEREZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Stephen Wayne, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM

for Appellee

Bennet J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**YOHALEM, Judge.**

**{1}** This matter was submitted to the Court on the brief in chief pursuant to the Administrative Order for Appeals in Criminal Cases from the Second, Eleventh, and Twelfth Judicial District Courts in *In re Pilot Project for Criminal Appeals*, No. 2022-002, effective November 1, 2022. Having considered the brief in chief, concluding the briefing submitted to the Court provides no possibility for reversal, and determining that this case is appropriate for resolution on Track 1 as defined in that order, we affirm for the following reasons.

{2}     Defendant appeals the district court's order revoking his probation, asserting violations of his due process and confrontation rights. [BIC 9-10] In August 2023, Defendant began serving a probation term in Colorado, pursuant to an Interstate Compact Transfer that transferred his probation from New Mexico to Colorado. [BIC 2] In October 2024, the State moved to revoke Defendant's probation after receiving a violation report from supervising officers in Colorado. [BIC 2; Ex. PDF 3-4] The report designated Defendant as an absconder and stated in pertinent part that (1) Defendant failed to report to probation officers following his transfer to Colorado; (2) officers had been unable to contact Defendant since August 13, 2024; and (3) Defendant's whereabouts remained unknown. [BIC 2; Ex. PDF 3-4]

{3}     At the probation violation hearing, the district court heard testimony from a probation officer, PO Baker, who initially supervised Defendant in New Mexico prior to the transfer to Colorado, as well as a probation supervisor in Farmington. [BIC 2-3] Both witnesses testified as to the reliability of the probation violation report from Colorado, which the State admitted as an exhibit. [BIC 18] Defendant objected to PO Baker's testimony regarding the violation report, asserting that her testimony violated his right of confrontation because PO Baker had no firsthand knowledge of Defendant's alleged violations in Colorado and the State therefore could not prove to a reasonable degree of certainty that Defendant violated the terms of his probation. [BIC 6, 8-10] The district court ultimately found the report to be reliable and determined there was no motive for the State's witnesses to fabricate its content, and further found the violation report to be a routine recording that provided an objective conclusion regarding Defendant's failure to report, which was a violation of the terms of his probation. [BIC 17]

{4}     On appeal, Defendant argues that the district court violated his due process rights by failing to permit him the opportunity to confront and cross-examine any witnesses who would have firsthand knowledge of the allegations within the violation report, such as Defendant's probation officer in Colorado. [BIC 9-10, 17-18] Defendant contends that because PO Baker did not have firsthand knowledge of Defendant's reporting activity or requirements, the record "is without live testimony of any person with critical information about [Defendant]'s compliance or lack thereof," and, therefore, neither the information nor the "subjective" conclusions contained in the violation report are verifiable. [BIC 17-19]

{5}     Whether Defendant was afforded due process is subject to de novo review. *See State v. Guthrie*, 2011-NMSC-014, ¶ 22, 150 N.M. 84, 257 P.3d 904. "Because loss of probation is loss of only conditional liberty, the full panoply of rights due a defendant in a criminal trial do not apply." *Id.* ¶ 10 (alterations, internal quotation marks, and citation omitted). "The right protected in probation revocation [cases] is not the [S]ixth [A]mendment right to confrontation, guaranteed every accused in a criminal trial, but rather the more generally worded right to due process of law secured by the [F]ourteenth [A]mendment." *Id.* ¶ 12. Among the components of due process is the right to confront and cross-examine adverse witnesses, unless there is good cause for not allowing confrontation within the meaning of the Fourteenth Amendment. *See id.* In

determining whether good cause is present, we employ a "sliding-scale analysis" to address the following non-exhaustive list of factors in relation to the evidence at issue:

> (1) whether it is contested or uncontested; (2) whether it is central or collateral to proving the alleged violation; (3) whether it is about a subjective, judgment-based observation that is subject to inference and interpretation, making the witness's demeanor and credibility highly relevant to the truth-finding process, or about an objective conclusion, a routine recording, or a negative fact, making the demeanor and credibility of the witness less relevant to the truth-finding process; (4) whether its source is reliable or unreliable because the source does or does not have a motive to fabricate; and (5) whether it is corroborated by a reliable source or is unsupported or contradicted.

*See State v. Godinez*, 2025-NMSC-005, ¶ 26, 563 P.3d 854 (internal quotation marks and citation omitted).

**{6}** Under an analysis of the *Godinez* factors, "there is no bright-line rule for determining good cause to not require confrontation." *Id.* ¶ 24 (internal quotation marks and citation omitted). Although "a probationer has a presumptive right to confrontation, the issue must be decided on a case-by-case basis, guided by the due-process command of fundamental fairness under the circumstances of each case." *Id.* This inquiry "must focus on the relative need for confrontation to protect the truth-finding process and the substantial reliability of the challenged evidence." *Id.* (internal quotation marks and citation omitted). This "requires a practical inquiry, keeping in mind that the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Id.* (internal quotation marks and citation omitted). Ultimately, "a court must determine the need for, and utility of, confrontation with respect to the truth-finding process and in light of the particular case at hand, including the specific charge pressed against the probationer." *Id.* (internal quotation marks and citation omitted).

**{7}** Turning to an analysis of the *Godinez* factors, we address first whether the evidence at issue is contested or uncontested. *See id.* ¶ 26. Here, although Defendant challenges the admission of the testifying witnesses' statements and the violation, the veracity of the underlying allegations is not contested. "[L]ive testimony of adverse witnesses, such as a probation officer, is *not* always required during probation revocation hearings" because the purpose of such hearings is to "evaluate *contested* relevant facts." *Guthrie*, 2011-NMSC-014, ¶ 12 (internal quotation marks and citation omitted); *see also id.* ¶ 13 (explaining that alternatives to live testimony may be available during probation revocation proceedings, including affidavits, depositions, documentary evidence, and other "creative solutions" aimed at addressing the practical difficulties of fulfilling confrontation requirements in the context of probation revocation proceedings (internal quotation marks and citation omitted)). As to the second factor, the facts and conclusions in the violation report are highly probative of the State's allegation that Defendant violated his probation terms, which makes the violation report

"central to the necessary proof that [the d]efendant violated probation." *See Godinez*, 2025-NMSC-005, ¶ 28 (internal quotation marks and citation omitted).

**{8}** Regarding the third factor, Defendant asserts that the information in the violation report amounted to "subjective" conclusions [BIC 17-19], quoting *Guthrie*, 2011-NMSC-014, ¶ 39, for the proposition that "[l]ive testimony is often more useful and important in ascertaining the truth of subjective conclusions which involve judgment, perception, credibility, inferences, and interpretation." We disagree, however, that the violation report or the information contained therein constitutes subjective conclusions implicating the judgment, perception, credibility, inference, and interpretation of the probation officers who supervised Defendant's probation in Colorado and who drafted and submitted the report. To the contrary, while the information in the violation report is central to proving the violation, the documentation of such information in the violation report amounts to a routine recording that does not involve a "subjective, judgment-based observation that is subject to inference and interpretation" of a sort that would require live testimony to gauge truthfulness. *Godinez*, 2025-NMSC-005, ¶ 21 (internal quotation marks and citation omitted). Instead, Defendant's failure to report is "an objective, negative, and rather routine fact that was easily and reliably established to a reasonable degree of certainty by a written statement." *See id.* ¶ 22 (alteration, internal quotation marks, and citation omitted); *see also Guthrie*, 2011-NMSC-014, ¶ 46 (concluding that a defendant's reported noncompliance with a treatment plan was "an objective, negative, and rather routine fact [that] was easily and reliably established to a reasonable degree of certainty by a written statement from the treatment center").

**{9}** Regarding the fourth factor, "whether the source of the evidence is reliable or unreliable depending on the presence or absence of a motive to fabricate," *Godinez*, 2025-NMSC-005, ¶ 29, the district court found the violation report to be a reliable routine recording documented without a motive to fabricate based on testimony from the State's witnesses to that effect. [BIC 5, 17-18] Although Defendant challenges the admission of the violation report without testimony from his Colorado probation officer, he does not directly challenge the reliability of the violation report. [BIC 19-20] To whatever extent Defendant's arguments on appeal ask this Court to reweigh the provided testimony, we decline to do so. *See State v. Griffin*, 1993-NMSC-071, ¶ 17, 116 N.M. 689, 866 P.2d 1156 (noting that this Court does not reweigh the evidence, and we may not substitute our judgment for that of the fact-finder, as long as there is sufficient evidence to support the verdict); *see also State v. Salas*, 1999-NMCA-099, ¶ 13, 127 N.M. 686, 986 P.2d 482 (explaining that it is for the jury to resolve any conflicts and determine weight and credibility in the testimony).

**{10}** Lastly, as to the fifth and final factor regarding whether the contested evidence is corroborated by a reliable source, the district court heard testimony from the State's witnesses who corroborated the veracity and reliability of the violation report. Although the State did not present evidence that specifically corroborated the substance of the violation report, this does not preclude a conclusion that, on balance, the *Godinez* factors weigh significantly towards there being good cause not to require confrontation. *See* 2025-NMSC-005, ¶ 39 (acknowledging "that the strength of corroborating evidence

may be a significant factor in the good-cause analysis," but specifying that the inquiry must ultimately "focus on the need for, and utility of, confrontation with respect to the truth-finding process and in light of the particular case at hand, including the specific charge pressed against the probationer" (internal quotation marks and citation omitted)). Further, to whatever extent Defendant suggests that we should reweigh the testimony presented to make different findings than those by the district court, we decline to do so. *See Griffin*, 1993-NMSC-071, ¶ 17; *Salas*, 1999-NMCA-099, ¶ 13.

**{11}** Based on the above, we conclude that the district court did not err in finding there to be good cause to not require confrontation. *See Godinez*, 2025-NMSC-005, ¶¶ 22-23. We further conclude that Defendant has not demonstrated that the district court deprived him of due process by admitting the violation report without also requiring the State to present testimony from Defendant's Colorado probation officer for confrontation purposes.

**{12}** For the foregoing reasons, we affirm.

**{13} IT IS SO ORDERED.**

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Chief Judge**

**J. MILES HANISEE, Judge**