This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

**v.**                                                    **No. A-1-CA-35197**

**DAVID C. GALVAN,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Drew D. Tatum, District Judge**

Hector H. Balderas, Attorney General
Laura E. Horton, Assistant Attorney General
Santa Fe, NM

for Appellee

Robert E. Tangora, L.L.C.
Robert E. Tangora
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**HANISEE, Judge.**

{1}     Defendant David Galvan appeals from the district court's order revoking his probation. Defendant challenges his probation revocation on due process grounds, and argues that his confrontation rights were violated by the district court's reliance on hearsay evidence of unverified facts to revoke his probation. Defendant argues that without the inadmissible hearsay testimony, there was insufficient evidence to support the revocation of his probation. Having considered Defendant's arguments and reviewed the recording of the probation revocation hearing, we affirm.

**BACKGROUND**

{2}     Defendant entered into a plea agreement with the State, which consolidated his sentence in two separate district court cases, and provided for supervised probation in lieu of incarceration. The State moved to revoke Defendant's probation based on allegations asserted in the probation revocation report (PVR). The State's motion alleged that Defendant failed to comply with the standard conditions requiring him to report as required, and to report a change of status, which required Defendant to provide notice to the probation office if he left the county, moved residences, or changed jobs. The State then filed an amended motion to revoke, based on the first addendum to the PVR, which alleged a violation of the standard condition requiring the obeyance of state law. The allegation was based on subsequently lodged charges of resisting, evading, or obstructing an officer; failure to yield; and no proof of

insurance. The State also filed a second amended motion to revoke probation based on the allegations in the second addendum to the PVR, alleging an additional violation for failure to report as required. In total, the State asserted factual allegations to support four violations of three of the conditions of probation. After hearing the State's evidence, the district court ruled that Defendant violated all three conditions, and revoked probation. Defendant appeals and challenges the district court's consideration of hearsay evidence to support the decision to revoke probation.

**DISCUSSION**

**Arguments**

{3}     Defendant contends that the district court failed to provide him minimum due process by revoking his probation without giving him an opportunity to confront the witnesses and without a finding of good cause for not allowing confrontation. Defendant relies on *State v. Guthrie*, 2011-NMSC-014, ¶¶ 3-5, 150 N.M. 84, 257 P.3d 904, and *State v. Phillips*, 2006-NMCA-001, ¶ 10, 138 N.M. 730, 126 P.3d 546 *overruled on other grounds by Guthrie*, 2011-NMSC-014. Defendant argues that like *Phillips*, the State only presented hearsay testimony from a supervising probation officer summarizing the contents of a PVR not admitted into evidence. As a result, Defendant contends that the district court had no means of testing the accuracy or reliability of the facts recited in the PVR.

**{4}** The State argues that insofar as Defendant asserts he was unable to confront his former probation officer regarding the alleged failure to report, there was another allegation supported by testimony from his new probation officer, who did testify, and to whom he also failed to report. In addition, the State argues that the violation for failing to obey the law was supported by the district court taking judicial notice of a judgment and sentence for new convictions. The State asserts that because this Court will uphold the district court's revocation of probation if just one violation is proven, it is unnecessary to reach Defendant's due process claims related to the remaining allegations. *See State v. Leon*, 2013-NMCA-011, ¶ 37, 292 P.3d 493 (stating that where a defendant challenges the sufficiency of the evidence supporting multiple probation violations, "if there is sufficient evidence to support just one violation, we will find the district court's order was proper"). We nevertheless review the evidence presented in support of each of the alleged probation violations in order to ascertain whether remand is warranted. *See State v. Marquart*, 1997-NMCA-090, ¶¶ 20-21, 123 N.M. 809, 945 P.2d 1027 (indicating that where the district court applies an improper legal standard when adjudicating an alleged violation of a condition of probation, remand is necessary for the district court to make factual findings under the proper standard, and to determine if revocation of probation is still warranted on the remaining violation alone).

4

**Standard of Review**

{5}     Whether Defendant's due process right to confrontation was violated is a question of law which we review de novo, while deferring to the district court's factual findings. *See State v. Castillo*, 2012-NMCA-116, ¶ 9, 290 P.3d 727. We review the district court's revocation of Defendant's probation for an abuse of discretion. *See Leon*, 2013-NMCA-011, ¶ 36. It is the state's burden to establish with a reasonable certainty that a defendant violated probation, *see id.*, "such that a reasonable and impartial mind would believe that the defendant violated the terms of probation." *State v. Green*, 2015-NMCA-007, ¶ 22, 341 P.3d 10. However, once the state offers evidence that a condition of probation was violated, the defendant must present some evidence to either excuse the non-compliance, *see State v. Martinez*, 1989-NMCA-036, ¶ 8, 108 N.M. 604, 775 P.2d 1321, or contest relevant facts. *See Guthrie*, 2011-NMSC-014, ¶ 35.

**Good Cause Inquiry**

{6}     When revocation of probation is based on hearsay, the determinative question is whether "good cause" supported the district court's decision to disallow confrontation. *See id.* ¶¶ 17, 33 (establishing the good-cause standard in the context of probation officers that relied exclusively on documents in the probation file about which they had no personal knowledge). The focus of the good-cause inquiry is

"whether confrontation of the witness is essential to the truth-finding process[,]" taking into consideration "the need for, and the utility of, confrontation of a live witness in the context of a particular case." *Id.* ¶¶ 2, 21. "In evaluating the utility of confrontation, courts look to the kind of evidence offered to prove a particular kind of assertion." *Id.* ¶ 34. "Significantly, live testimony of adverse witnesses, such as a probation officer, is *not* always required during probation revocation hearings." *Id.* ¶ 12.

{7}     Whether such good cause exists depends not only on the kind of evidence presented to establish the violation, but on the type of violation alleged—subjective or objective. *See id.* ¶¶ 2, 21. A violation premised upon a subjective conclusion involves "judgment, perception, credibility, inferences, and interpretation[,]" and "includes sensory-based or judgment-based determinations or interpretations, such as testimony evaluating a probationer's progress during a treatment program." *Id.* ¶¶ 38-39. "Live testimony is often more useful and important in ascertaining the truth of subjective conclusions." *Id.* ¶ 39. "Conversely, if the evidentiary question is merely objective, negative, and routine—that the probationer was not in a particular place when he was supposed to be—then the question frequently may be answered without the need for confrontation." *Id.* Situations "where good cause for not requiring confrontation is likely . . . would include situations in which the state's evidence is

uncontested, corroborated by other reliable evidence, and documented by a reliable source without a motive to fabricate, or possibly situations where the evidence is about an objective conclusion, a routine recording, or a negative fact, making the demeanor and credibility of the witness less relevant to the truth-finding process." *Id*. ¶ 40.

{8}	With these principles in mind, we review the hearsay evidence admitted to determine whether there was good cause for not allowing confrontation. We first address the objective violations for failure to report as required and failure to report a change of residence. In total, the State alleged facts to support three violations for failure to report as required in February 2015, March 2015, and May 2015, although only two violations of the standard condition to report as required were alleged by the State; and one violation for failure to report a change of residence. We then turn to the substantive violation for failure to obey the law.

**Failure to Report Violations**

{9}	Officer Shane Barnes, of the Adult Probation Office in Portales, New Mexico, was originally assigned to supervise Defendant's probation. When Officer Barnes resigned, Officer Kristy Muller took over supervision of Defendant's probation. Officer Muller testified that she had no personal contact with Defendant other than that she had previously seen him in the probation intake office. The order of

probation, signed by Officer Barnes, was admitted as an exhibit over Defendant's objection that Officer Muller did not herself observe Defendant sign the order. Officer Muller testified regarding the standard protocol for probationers, including how the conditions of probation are explained to probationers.

{10} Officer Muller also testified that Defendant violated the condition of his probation requiring him to report as required. She testified that Defendant failed to report to her in February 2015, for an appointment previously scheduled with Officer Barnes, as noted in their computer records. Defendant objected on grounds that Officer Muller lacked personal knowledge of the alleged violation, and that it was unknown whether other arrangements to meet on a different date could have been made with another officer that were not noted in the computer records. The district court overruled Defendant's objection.

{11} Officer Muller further testified that Defendant again failed to report to her in March 2015. She testified that following Defendant's failure to report in February 2015, she called Defendant's emergency contact, as listed in the probation office records. She was told by Defendant's sister that he was not there, and that she had not seen him. She asked Defendant's sister to give him the message to report as soon as possible. Officer Muller testified that the last time Defendant reported to the probation

office was in January 2015; and as of March 2015, when she wrote the PVR, Defendant still had not reported to her or made any contact with her office.

**{12}** Officer Muller also testified regarding Defendant's failure to report a change of residence. After speaking with Defendant's sister in February 2015, Officer Muller requested that Officer Tony Sanford, of the Portales Police Department, conduct a home visit. Officer Sanford reported back that Defendant's family members told him Defendant had been living in Clovis. Defendant was listed as, and was supposed to be, living in Portales.

**{13}** Officer Moises Barela, who subsequently took over the supervision of Defendant's probation, testified regarding the violation for failure to report in May 2015, as alleged in the second addendum to the PVR. Officer Barela testified that he began supervising Defendant when "he picked up new charges," and that Defendant failed to report as required after he bonded out on those charges. He further testified that an attempt to locate was conducted in May 2015 at Defendant's sister's house. He stated that there was no one there, but that he left his card, and then called and spoke with Defendant's sister. He related to her that Defendant had not reported to the office after bonding out and that he needed to report by nine o'clock in the morning the following day. Officer Barela testified that Defendant had not reported to him since he was assigned to his supervision.

9

**Good Cause for Not Requiring Confrontation**

{14} Defendant challenges whether there was good cause for not requiring confrontation. Specifically, as to the violation for failure to report in May 2015, Defendant argues that Officer Barela had no recollection of the PVR's contents. However, the record shows that Officer Barela's testimony was based on his personal knowledge, as alleged in the PVR he wrote and signed. Because Officer Barela testified regarding his personal knowledge, and was subject to cross-examination, there was no issue as to confrontation. Given that Officer Barela's testimony was properly admitted, we conclude that there was sufficient evidence to support the allegations in the second addendum to the PVR for failure to report as required in May 2015.

{15} Defendant also challenges the violations for failure to report as required in February and March 2015, and failure to report a change of residence, which were based on Officer Muller's PVR and testimony. Defendant argues that Officer Muller summarized facts contained in a PVR, which she had never before reviewed or signed, because the probation officer who had actually written the PVR did not testify. However, contrary to this assertion, both the record and our review of the hearing show that Officer Muller actually wrote and signed the PVR, which she referred to in her testimony, and which was made part of the record. We conclude that Defendant's

due process rights were not violated by the admission of Officer Muller's testimony, which was based on her personal knowledge.

**{16}** To the extent Defendant argues that the evidence was not reliable because Officer Muller was not the same officer that scheduled the report date for the failure to report violation in February 2015, and should not have been permitted to testify about another officer's data entries into the computer system, we conclude that there was good cause for not requiring confrontation in this instance. The asserted hearsay is the scheduled report date entered into the probation office's computer records by Officer Barnes, who did not testify. We conclude that the asserted hearsay had probative value. *See State v. Vigil*, 1982-NMCA-058, ¶ 23, 97 N.M. 749, 643 P.2d 618 ("In the law of evidence, if an item is "probative" it has the effect of proof; the item either proves or tends to prove. An item does not have the effect of proof, that is, it is lacking in rational persuasive power, absent some basis for accepting the item as reliable." (internal quotation marks and citation omitted)). The scheduled report date, entered into the computer by Defendant's former probation officer, as to whom there was no evidence of a motive to fabricate, constituted objectively reliable information supporting the routine documentation of a negative fact—that Defendant did not report to the probation office on the scheduled date. *See Guthrie*, 2011-

NMSC-014, ¶ 40 (recognizing situations where the demeanor and credibility of the witness is not as relevant in determining the truth).

**{17}** Significantly, Defendant did not present contrary evidence to show that he did report to Officer Muller as scheduled, that the scheduled date listed in the computer records was inaccurate, that he did in fact report a change of address, or that his address had not changed such that reporting a change of status was unnecessary. *See id.* ¶ 35 ("Evidence is contested if contrary evidence has been introduced or the probationer persuades the court that a particular assertion may not be reliable, accurate, or true."). "[T]he purpose of the hearing is to evaluate contested relevant facts, not every assertion the state may put forward as part of its case for revocation." *Id.* ¶ 12 (emphasis, internal quotation marks, and citation omitted).

**{18}** We recognize that by challenging the officers' personal knowledge of the alleged violations, Defendant was, by implication, asserting that the information they provided was not reliable. *See id.* ¶ 34 ("Is the assertion contested by the probationer, or is the state merely being asked to produce a witness to establish something that is essentially uncontroverted?"). We note that defense counsel did object on grounds that Officer Muller lacked personal knowledge of the February 2015 violation for failure to report and argued that other arrangements could have been made with another officer that were not noted in the computer records. However, this was presented in

the form of argument and Defendant presented no evidence to support it. *See State v. Cordova*, 2014-NMCA-081, ¶ 10, 331 P.3d 980 ("[A]rgument of counsel is not evidence." (internal quotation marks and citation omitted)). We see no utility in requiring live testimony from Defendant's former probation officer that entered the scheduled report date into the computer, particularly where Defendant argued, but did not present evidence, to contest it. *See Guthrie*, 2011-NMSC-014, ¶ 2 (guiding "the due process inquiry of our courts to focus more on the need for, and the utility of, confrontation of a live witness in the context of a particular case").

{19}     Moreover, these allegations are "merely objective, negative, and routine," and do not include conclusions involving "judgment, perception, credibility, inferences, and interpretation." *Id.* ¶ 39. Failing to report as scheduled, and failing to report a change of address are fairly routine matters, for which the probation office's computer records are sufficiently reliable sources on which to rely. *See id.* ¶ 36 (noting that "certain hearsay evidence is inherently *reliable* due to its source and the circumstances surrounding its introduction"). Had Officer Barnes himself testified, it is likely that he too would have referred to the computer records for the scheduled report date. *See id.* ¶ 46 ("[E]ven a live witness with personal knowledge would likely have referred to the file to make many of these assertions.").

**{20}** Defendant relies on *Anaya v. State*, 606 P.2d 156 (Nev. 1980), a Nevada Supreme Court case, cited with approval in *Vigil*, in support of his argument. *See Vigil*, 1982-NMCA-058, ¶ 22. Defendant argues that, like the facts in *Anaya*, where the probation officer testified to the contents of an arrest report which had been prepared by a different arresting officer, here too, the use of hearsay without confrontation should have been disallowed. Even if we were to rely on case law from another jurisdiction, the case cited by Defendant is both distinguishable and inapplicable to the alleged violations at issue here.

**{21}** In *Anaya*, the arrest report referred to by the testifying probation officer was not admitted into evidence, and the officer's testimony—based upon multiple levels of hearsay—was for the purpose of establishing a subjective violation of probation conditions. 606 P.2d at 121. The alleged violations were the presence of intoxicants via blood alcohol level, failure to cooperate with probation officers, failure to conform conduct to the law and failure to complete a rehabilitation program. *Id*. The Nevada Supreme Court determined that "[t]he probation officer's testimony, summarizing the contents of an arrest report, was multiple hearsay: predicated purely upon a recital of what the report said that the arresting officers had observed." *Id*. at 124. In contrast, here the alleged violations for failure to report as required and failure to report a change of address are objective in nature. In addition, Officers Muller and Barela both

14

testified, referencing the PVRs they themselves wrote and signed, and which were made part of the record below.

**{22}** Thus, we determine that there was good cause for justifying Officer Muller's hearsay testimony, thereby dispensing the need for live testimony from Defendant's former probation officer regarding the report date previously entered into the computer. While the district court may not have made an express finding of good cause, we conclude that the evidence presented by the State falls within the good cause side of the spectrum. *See Guthrie*, 2011-NMSC-014, ¶¶ 2, 48-49 (indicating that the test for the validity of the good cause finding need not be "formulaic" so long as the record supports "the functional equivalent" of a finding of good cause). It is apparent from the record that because of the probative value and reliability of the evidence presented here, there was good cause for not allowing confrontation. *See id.* ¶¶ 44-45. We note that although such good cause is apparent from the record in this case, we encourage district courts to make express findings of good cause when appropriate. *See id.* ¶ 49 ("Although the judge made no explicit findings of good cause, and we do exhort district judges in the future to explain their rulings in more detail, the test for validity of the finding need not be so formulaic.").

**Failure to Obey the Law**

{23}   Officer Barela testified that Defendant violated the condition of his probation requiring him to obey the law as alleged in the first addendum to the PVR. He testified that Defendant had been arrested on new charges. Over Defendant's objection, the State introduced the judgment and sentence from magistrate court. Defense counsel stipulated to Defendant's having been so convicted, but argued that it resulted from a no contest plea, which was not an admission, and that Defendant should have an opportunity to cross-examine witnesses. The district court overruled the objection, and took judicial notice of the judgment and sentence. The district court did, however, preclude Officer Barela from testifying as to the underlying facts of the new charges because he was not there, and indicated that Defendant could challenge the factual basis for the charges.

{24}   Defendant challenges Officer Barela's testimony on the basis that he merely *alleged* that Defendant had been arrested on additional charges. To the contrary, Defendant was not merely *alleged* to have committed a crime, for which he had not been convicted. This is not a situation where, for example an unidentified, confidential source alleges that the probationer has committed another crime. *Cf. id.* ¶ 36. Such a situation is of the sort which our Supreme Court has indicated "we would be hard pressed to envision a situation in which personal testimony and confrontation would

16

not be required." *Id*. ¶ 38. Here, the State introduced, and the district court took judicial notice of, the *actual* judgment and sentence of conviction. "If probation violation occurs upon indictment or conviction, introducing documents alone should be sufficiently reliable in the absence of some unusual variable." *Id*. Because the district court took judicial notice of the judgment and sentence, we see no error in considering it as probative evidence of the fact that Defendant was convicted. *See State v. Marquez*, 1986-NMCA-119, ¶ 7, 105 N.M. 269, 731 P.2d 965 ("In New Mexico, a plea of nolo contendere in a criminal proceeding provides the basis for the criminal conviction."); *see also* NMSA 1978, § 30-1-11 (1963) ("No person shall be convicted of a crime unless found guilty by the verdict of the jury . . . or upon the defendant's confession of guilt or a plea of nolo contendere[.]").

**CONCLUSION**

{25}     Because we conclude that there was good cause for not requiring confrontation in admitting the hearsay evidence, we hold that the State met its burden of establishing with a reasonable certainty that Defendant violated each of the three conditions of probation alleged in the PVRs; and Defendant presented no evidence to either excuse non-compliance or to contest the relevant facts presented. We therefore conclude that there was no abuse of discretion by the district court, and affirm the amended order revoking probation. *See State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d

829 ("We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." (internal quotation marks and citation omitted)).

{26}    **IT IS SO ORDERED.**


_____

**J. MILES HANISEE, Judge**


**WE CONCUR:**


_____

**MICHAEL E. VIGIL, Judge**


_____

**STEPHEN G. FRENCH, Judge**